## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARK KALENKOSKI,** | : | **Civil No. 3:14-CV-00592** |
| | : | |
| **Plaintiff,** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **v.** | : | |
| | : | |
| **CAROLYN W. COLVIN,** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

### I.    Introduction

Plaintiff, Mark Kalenkoski, appeals from an adverse decision of the Commissioner of Social Security denying his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act.  The jurisdiction of this Court is invoked pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1383(c)(3)(incorporating 42 U.S.C. §405(g) by reference).  This matter has been referred to the undersigned United States Magistrate Judge on consent of the parties for resolution pursuant to the provisions of 28 U.S.C. §636(c) and Rule 73 of the Federal Rules of Civil Procedure.  (Docs. 12, 13).  For the reasons expressed herein, we will **AFFIRM** the decision of the Commissioner.

### II.    Background and Procedural History

The plaintiff, Mark Kalenkoski, a former security guard, filed applications for

DIB and SSI in October of 2010, when he was only 25 years old, contending that his severe migraines, head problems, and dizziness prevented him from engaging in full time employment. (Tr. 156). Kalenkoski reported that he stopped working in October of 2008 to pursue his bachelor's degree, and in his application for DIB alleged that his condition became disabling approximately one year later, on December 20, 2009.[1] Id.

Kalenkoski's applications were denied initially in January 2011. Following the denial of his claim, Kalenkoski requested an administrative hearing to appeal the initial denial of his claims. His request was granted, and on May 11, 2012, Plaintiff,

---

[1] From the plaintiff's perspective there is a notably lack of clarity regarding when he became disabled. In his application for DIB Kalenkoski alleges that his conditions became disabling as of December 20, 2009, (Tr. 132), whereas in his application for SSI Plaintiff alleged that his disability began on October 13, 2008, the date he stopped working. (Tr. 134). In his decision, the ALJ noted that Kalenkoski alleged disability beginning December 20, 2009, in both applications. (Tr. 14). Kalenkoski did not object to the use of the December 2009 onset date at any point during the proceedings and in his brief notes that his alleged onset date for both applications was December 20, 2009. (Doc. 8 p. 1). Plaintiff exhibited similar confusion on the issue of the onset date of his migraine headaches relative to his last day of employment. Kalenkoski testified that he had migraine headaches as a child that stopped when he was 16 and resumed in 2009. Similarly, his treatment records reflect that he was diagnosed with migraine NOS in December 2009 but was treating with Dr. Dr. Aslam in 1997. (Tr. 81, 290, 459). Plaintiff testified that he had several episodes while working as a security guard, and that his co-workers would help him out to his car to lie down. (Tr. 83-84). However, in a disability report and work history report Kalenkoski stated that he stopped working in 2008, (Tr. 156, 173), prior to the resurgence of his symptoms. At his administrative hearing Plaintiff testified that he stopped working in 2009, (Tr. 69), however his earning records do not reflect any income in 2009. (Tr. 141).

represented by counsel, appeared and testified before Administrative Law Judge (ALJ)

Gerard Langan in Wilkes-Barre, Pennsylvania.  Impartial Vocational Expert (VE)

Fran Terry also appeared and testified during the proceedings.  On October 22, 2012,

the ALJ issued a written decision denying Kalenkoski's applications.  Plaintiff

requested review of the ALJ's decision by the Appeals Council.  On January 29, 2014,

the Appeals Council denied Kalenkoski's request for review, making the ALJ's

decision denying these claims the final decision of the Commissioner subject to

judicial review by this Court. 20 C.F.R. §§404.981, 416.1481.

On March 28, 2014, Kalenkoski initiated this action by filing a Complaint in

this Court in which he requested that this Court reverse the Commissioner's final

decision denying Plaintiff's applications and enter an order awarding benefits, or in

the alternative, that this matter be remanded to the Social Security Administration for

a new administrative hearing.  (Doc. 1).  On May 29, 2014, the Commissioner filed

her Answer to Plaintiff's Complaint, in which she asserted that the decision of the

Commissioner is supported by substantial evidence and should not be disturbed.

(Doc. 6).  Together with her Answer, the Commissioner filed a copy of the

administrative record.  (Doc. 7).  This appeal, having been fully briefed by the parties,

is now ripe for decision. (Docs. 8, 10).

### III.    Discussion

Plaintiff contends that the Commissioner's decision that he is able to perform his past work as a security guard or "other work," is based on a faulty residual functional capacity (RFC) assessment, and that the ALJ's decision at step five of the five step sequential disability analysis process was unsupported by substantial evidence because the hypothetical questions posed to the VE did not reflect all of Plaintiff's credibly established limitations.  In response, the Commissioner asserts that the ALJ's RFC assessment and the ALJ's decision at step five are both  supported by substantial evidence.

### A.    Standards of Review–The Roles of the Administrative Law Judge and This Court

Resolution of the instant social security appeal involves an informed consideration of the respective roles of two adjudicators–the ALJ and this court.  At the outset, it is the responsibility of the ALJ in the first instance to determine whether a claimant has met the statutory prerequisites for entitlement to benefits. To receive disability benefits, a claimant must present evidence which demonstrates that the claimant has an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

4

of not less than 12 months."  42U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A).

Furthermore,

> [a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B).

### 1.    The Sequential Evaluation Process

In making this determination the ALJ employs a five-step evaluation process to determine if a person is eligible for disability benefits.  See 20 C.F.R. §§ 404.1520, 416.920; see also Plummer  v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999).  If the ALJ finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further.  See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  As part of this analysis the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing

past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work.  See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Before considering step four in this process, the ALJ must also determine the claimant's residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."  Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1545, 416.945.  In making this assessment, the ALJ considers all of the claimant's impairments, including any medically determinable non-severe impairments.   20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

This disability determination involves shifting burdens of proof.  The initial burden rests with the claimant to demonstrate that she is unable to engage in past relevant work.  If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform.  Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).

The ALJ's disability determination must also meet certain basic procedural and substantive requirements.  Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this

disability determination.  Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests."  Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981).  Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707.  In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

2.    **Legal Benchmarks for the ALJ's Assessment of a Claimant's Credibility**

An ALJ's findings based on the credibility of a claimant are to be accorded great weight and deference, since an ALJ is charged with the duty of observing a witness' demeanor and credibility.  Frazier v. Apfel, No. 99-CV-715, 2000 WL 288246, at *9(E.D. Pa. Mar. 7, 2000)(quoting Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531(6th Cir. 1997)).  Furthermore, in making a finding about the credibility of a claimant's statements, the ALJ need not totally accept or totally reject the individual's statements.  SSR 96-7p.  The ALJ may find all, some, or none of the claimant's allegations to be credible, or may find a claimant's statements about the

extent of his or her functional limitations to be credible but not to the degree alleged. Id.

The Social Security Rulings and Regulations provide a framework under which a claimant's subjective complaints are to be considered.  20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p.  First, symptoms, such as pain or fatigue, will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings.  20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 96-7p.  During the second step of his or her credibility assessment, the adjudicator must determine whether the claimant's statements about the intensity, persistence or functionally limiting effects of his or her symptoms are substantiated based on the adjudicator's evaluation of the entire case record.  20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 96-7p.  This includes, but is not limited to: medical signs and laboratory findings, diagnosis and other medical opinions provided by treating or examining sources, and "other medical sources"; and, information concerning the claimant's symptoms and how they affect his or her ability to work.  Id.  The Social Security Administration has recognized that individuals may experience their symptoms differently and may be limited by their symptoms to a greater or lesser extent than other individuals with the same medical impairments, signs, and laboratory

8

findings.  SSR 96-7p.  Thus, to assist in the evaluation of a claimant's subjective symptoms, the Social Security Regulations identify seven factors which may be relevant to the assessment of the severity or limiting effects of a claimant's impairment based on a claimant's symptoms.  20 C.F.R. §§404.1529(c)(3), 416.929(c)(3).  These factors include: activities of daily living; the location, duration, frequency, and intensity of the claimant's symptoms; precipitating and aggravating factors; the type dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his or her symptoms; treatment, other than medication that a claimant has received for relief; any measures the claimant has used to relieve his or her symptoms; and, any other factors concerning the claimant's functional limitations and restrictions.  Id.

### 3. Legal Benchmarks for Assessing Treating Physician Opinions

The Social Security Regulations define "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including your symptoms, diagnosis and prognosis, what [he or she] can still do despite your impairment(s), and your physical or mental restrictions." 20 C.F.R. §§404.1527(a)(2) and 416.927(a)(2).  Although it is clearly within the ALJ's authority to choose whom to credit when the record contains conflicting medical opinions, Morales v. Apfel, 225

F.3d 310, 317 (3d Cir. 2000), the ALJ "cannot reject evidence for no reason or the wrong reason." Plummer, 186 F.3d at 429 (3d Cir. 1999)(citing Mason , 994 F.2d at 1066).

Moreover, like the evaluation of a claimant's symptoms, the Social Security Rulings and Regulations provide a framework under which medical opinion evidence must be considered.  It is well-established that "a cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation over a prolonged period of time." Morales, 225 F.3d at 317(citations omitted).  The Social Security Regulations provide that:

> if [the ALJ] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case  record, [the ALJ] will give it controlling weight.

20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); see also SSR 96-2p.

In cases where the ALJ finds that no treating source opinion is entitled to controlling weight, however, the regulations provide that the weight of all non-controlling opinions by treating, examining, and non-examining medical sources should be evaluated based on the following factors: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3)

the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. §§404.1527(c), 416.927(c). In addition, the ALJ should consider any other factors that tend to support or contradict the opinion that were brought to his or her attention. 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6). In addition, the ALJ should consider any other factors that tend to support or contradict the opinion, but only if brought to his or her attention. 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6).

### 4. Other Procedural and Substantive Requisites for an ALJ Ruling–Proper Hypothetical Questions for Vocational Experts

The formulation of a proper hypothetical question has a dual significance in social security proceedings. First, as an evidentiary matter, it determines whether the vocational expert's opinion can be considered as substantial evidence supporting an ALJ finding. Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002). More fundamentally, however, an erroneous or inadequate hypothetical question undermines the reliability of any RFC determination since "objections to the adequacy of hypothetical questions posed to a vocational expert often boil down to attacks on the RFC assessment itself." Rutherford v. Barnhart, 399 F.3d 546, 554 n. 8 (3d Cir. 2005). As such, an ALJ must exercise care when formulating proper hypothetical questions posed to VEs who opine on the availability of work for a particular

claimant.  In this regard, the controlling legal standards are clear, and clearly defined.

As the United States Court of Appeals for the Third Circuit has observed:

> Discussing hypothetical questions posed to vocational experts, we have said that "[w]hile the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments." Podedworny [v. Harris, 745 F.2d 210, 218 (3d Cir. 1984)]. A hypothetical question posed to a vocational expert "must reflect *all* of a claimant's impairments." Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir.1987) (*emphasis added*). Where there exists in the record medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence. Podedworny, 745 F.2d at 218 (citing Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1155 (3d Cir.1983)).

Burns, 312 F.3d at 123.

In examining this issue, though,"[w]e do not require an ALJ to submit to the vocational expert every impairment *alleged* by a claimant." Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005)(emphasis in original). Rather, the ALJ must simply "accurately convey to the vocational expert all of a claimant's *credibly established limitations."* Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005), citing Plummer v. Apfel, 186 F.3d 422, 431 (3d Cir. 1999). Therefore, in making this assessment and framing a proper hypothetical question for a vocational expert, "[l]imitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible—the ALJ can choose to credit

portions of the existing evidence but 'cannot reject evidence for no reason or for the wrong reason' (a principle repeated in <u>Mason v. Shalala</u>, 994 F.2d 1058, 1066 (3d Cir.1993); Reg. § 929(c)(4))." <u>Rutherford v. Barnhart</u>, 399 F.3d 546, 554 (3d Cir. 2005).

### 5.    <u>Judicial Review of ALJ Determinations–Standard of Review</u>

Once the ALJ has made a disability determination, it is then the responsibility of this Court to independently review that finding.  In undertaking this task, this Court applies a specific, well-settled and carefully articulated standard of review.  In an action under 42 U.S.C. § 405(g) or 42 U.S.C. §1383(c)(3) to review the decision of the Commissioner of Social Security denying a claim for disability benefits, the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"  42 U.S.C. § 405(g).

The "substantial evidence" standard of review prescribed by statute is a deferential standard of review.  <u>Jones v. Barnhart</u>, 364 F.3d 501, 503 (3d Cir. 2004). When reviewing the denial of disability benefits, we must simply determine whether the denial is supported by substantial evidence.  <u>Brown v. Bowen</u>, 845 F.2d 1211, 1213 (3d Cir. 1988); <u>see also</u> <u>Johnson v. Comm'r of Soc. Sec.</u>, 529 F.3d 198, 200 (3d Cir. 2008).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). It is less than a preponderance of the evidence but more than a mere scintilla of proof. Richardson v. Perales, 402 U.S. 389, 401 (1971).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Plummer, 186 F.3d at 427 (quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)).

A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason, 994 F.2d at 1064.  However, in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the decision] from being supported by substantial evidence." Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620 (1966). Moreover, in conducting our review we are cautioned that:

> "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir.1997); see also Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 801 (10th Cir.1991) ("We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.").

Frazier v. Apfel, No. 99-CV-715, 2000 WL 288246, at *9 (E.D.Pa. Mar. 7, 2000).

Furthermore, in determining if the ALJ's decision is supported by substantial evidence the court may not parse the record but rather must scrutinize the record as a whole.  Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

**B.     The ALJ's Decision**

In the Commissioner's final decision, dated October 22, 2012, the ALJ proceeded through steps one through five of the five-step sequential evaluation process, despite his finding at step four that Kalenkoski retained the requisite residual functional capacity (RFC) to perform his past relevant work as a security guard.  In doing so, the ALJ found at step one that Plaintiff had not engaged in any substantial gainful activity between his alleged onset date and the date of decision.  (Tr. 16).  At step two, the ALJ found that Kalenkoski's impairments due to migraine headaches, asthma, vertigo, and scoliosis "severe" in that they had more than a minimal effect on his ability to perform basic work activities, but found that Plaintiff's medically determinable impairment due to anxiety was "non-severe" as it did not cause more than a minimal limitation in his ability to perform basic mental work activities.  (Tr. 16-17).  At step three, the ALJ found that none of Kalenkoski's "severe" impairments, either individually or in combination, met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404 Subpart P Appendix 1.  (Tr. 18).

In accordance with 20 C.F.R. §§ 404.1520 and 416.920, before proceeding to

step four the ALJ assessed Kalenkoski's RFC based on his review of all the relevant evidence in Plaintiff's case record.  In so doing, the ALJ found that Kalenkoski's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible, and supported his conclusion by citing to the clinical observations recorded in Plaintiff's medical treatment notes, and by relying on an RFC assessment by a state agency medical consultant that Kalenkoski could perform a range of light work.[2]  (Tr. 18-21).  Though the ALJ accorded great weight to this opinion, he gave Plaintiff the "benefit of all reasonable doubt" on the issue of his reported dizziness and vertigo and further restricted him to sedentary work. (Tr. 20).  Thus, the ALJ concluded that Kalenkoski had the RFC to perform sedentary work as defined in 20 C.F.R. §§404.1567(a) and 416.967(a) except that:

> he can never climb ropes, ladders or scaffolds; and must avoid

---

[2]With respect to the RFC assessment by Kevin Alleman, who the ALJ identified as a state agency medical consultant, we note that the exact nature of Mr. Alleman's credentials is not clearly established in the record.  Mr. Alleman did not enter a medical consultant code at the end of his report. (Tr. 104).  Further, Mr. Alleman's statement inaccurately reflects that there is a treating or examining source statement regarding Plaintiff's physical capacities in the file. Id.  The record also contains an analysis of Plaintiff's vocational factors by Mr. Alleman – an assessment that is not traditionally completed by a medical consultant. (Tr. 99).  Neither party disputes the ALJ's characterization of Mr. Alleman as a state agency medical reviewer.  Because the parties have not addressed this issue, and because we find that the ALJ's decision independently rests upon substantial evidence wholly apart from this characterization of Mr. Alleman, we conclude that further consideration of the matter is unnecessary.

unprotected heights and moving machinery.   He must also avoid concentrated exposure to environmental irritants, such as dusts, fumes, odors and chemicals; and must avoid temperature extremes.

(Tr. 18).

At step four, the ALJ found that, based on this RFC, Kalenkoski was able to perform his past relevant work as a security guard as generally and actually performed, which the VE classified as a semi-skilled position, generally and actually performed at a *light* exertion level.[3]  (Tr. 21, 89).  However, the ALJ went on to explain that, in addition to being able to perform his past relevant work, considering Plaintiff's age, education, work experience and RFC, there were other sedentary jobs that existed in significant numbers in the national economy that Plaintiff could also perform.  (Tr. 21-22).  In support of his alternative conclusion that Plaintiff could perform other work, as is required to find a claimant to be "not disabled" at step five, the ALJ cited to testimony by VE Terry that an individual with the same vocational

---

[3] The ALJ's conclusion that Plaintiff retained the requisite RFC to perform his past relevant work as a security guard may seem in some respects to be at odds with VE Terry's testimony.  (Tr. 21, 89).  VE Terry testified that an individual with the same RFC as Plaintiff (sedentary) would not be able to perform Plaintiff's past relevant work as a security guard (light).  (Tr. 92-93).  This error was not raised by either party, nonetheless we find that it is harmless in this instance, because the ALJ expressly went on to conclude in the alternative that Plaintiff could perform "other work," identified as sedentary work, and that his conclusion in that regard was  both consistent with VE Terry's testimony, and supported by substantial evidence. (Tr. 22, 92-93).

17

factors and RFC as Plaintiff could perform the representative occupations of: surveillance system monitor; information clerk; and customer service representative. Id.

## C.   The ALJ Properly Evaluated the Credibility of Plaintiff's Subjective Complaints

During his administrative hearing, and in a function report and pain questionnaire Kalenkoski described the intensity, persistence, and limiting effects of his various impairments.  Plaintiff stated that he experiences unbearable migraine headaches with nausea and dizziness – which occur at random approximately four times per week and last up to two hours – lower back pain, and leg weakness. Plaintiff testified that his symptoms are triggered by lifting, kneeling, standing, or extreme heat or cold.  At the hearing, Kalenkoski reported that he could: sit for up to two hours at one time' stand for up to forty-five minutes at one time; walk up to thirty minutes at one time; and lift a 24 pack of soda.  In a function report Kalenkoski reported that, despite his impairments, he is able to care for himself, feed and walk his dog, prepare simple meals on a daily basis, perform household chores, shop in stores, and had no problem paying attention.  At the time of the hearing Plaintiff was also taking online courses towards his bachelor's degree, and testified that he was able to complete his course work by taking breaks throughout the day.

In his decision, the ALJ found that Kalenkoski's subjective complaints were not

credible to the extent they were inconsistent with his RFC assessment.  (Tr. 19).

Plaintiff contends that the ALJ erred by failing to provide meaningful analysis and

consideration of the required regulatory factors, and that this error renders the ALJ's

RFC assessment defective.  In particular, Kalenkoski asserts that the ALJ did not

properly consider and evaluate such factors as "the intensity, persistence in limiting

effects of the alleged physical symptoms, treating physicians' medical opinions, prior

work record, daily activities, and precipitating and aggravating factors" in accordance

with 20 C.F.R. §§404.1529, 416.929, and SSR 96-7p when he found that the intensity,

persistence and limiting effects of Plaintiff's arm and leg weakness, fatigue, nausea,

dizziness, and migraine pain were not as severe as Kalenkoski alleged.  (Doc. 8 p. 3).

Our review of the ALJ's decision as a whole confirms that, while the ALJ did

not engage in a protracted discussion of the factors outlined in 20 C.F.R. §§404.1529

and 416.929, he adequately consider them on the sparse factual record proffered by

Kalenkoski.  Furthermore, we find that the ALJ discussed at length how the objective

medical evidence failed to justify fully crediting Plaintiff's allegations regarding the

intensity, persistence and limiting effects of his impairments.  The ALJ noted that

Kalenkoski's migraines resulted in dizziness and nausea, and that Plaintiff told his

physician that he could barely walk because he felt "off balance."  (Tr. 19).  He also

reported that Kalenkoski began to experience "periodic paralysis and intermittent

19

weakness in the bilateral lower extremities." (Tr. 20).  The ALJ observed, however, that Plaintiff's treating physicians recorded that Kalenkoski's migraines and vertigo were improving with treatment and that his reflexes, muscle strength and gait were normal.  (Tr. 19-20).   Furthermore, the ALJ recounted that MRIs of Kalenkoski's head were normal,  EMGs revealed no evidence of radiculopathy or neuropathy in Plaintiff's lower extremities, and diagnostic imaging of Kalenkoski's abdomen was also normal.  Id.  The ALJ also noted that, despite his alleged impairments, Plaintiff was able to watch television, complete his online course-work, and perform most of his homemaking duties.  (Tr. 19).  He further recognized that Kalenkoski's migraines were aggravated by extreme hot and cold temperatures, which was accounted for in the ALJ's RFC assessment.  Id.  Accordingly, we find that the ALJ properly assessed the credibility of Plaintiff's allegations in accordance with 20 C.F.R. §§404.1529, 416.929, and SSR 96-7p, and that the ALJ's assessment is supported by substantial evidence.  Thus, we will not disturb the ALJ's assessment of Kalenkoski's credibility.

### D.   The ALJ Properly Evaluated Plaintiff's Medical Records

In his brief, Plaintiff contends that the ALJ failed to give adequate rationale when rejecting the treating and examining medical source opinions, and that this error rendered the ALJ's RFC assessment defective.  In support of his position, Kalenkoski cites to no medical opinions but rather catalogues treatment notes by Drs. Hora and

20

Rosen which illustrate that Plaintiff experienced daily severe headaches, (Tr. 247-65, 587-966); medical records from Dr. Rosen which reflect that Kalenkoski's headaches began at age ten, and resulted in fatigue, weight loss, and episodes of leg weakness, (Tr. 365-436); treatment notes by Dr. Aslam which show that Kalenkoski was treated for headaches in 1997, when Plaintiff was only thirteen, (Tr. 459, 477-81); records showing that Kalenkoski underwent one month of physical therapy in an unsuccessful attempt to alleviate his migraines, (Tr. 482-89); and notes from Geisinger Medical Group which document Plaintiff's symptoms (Tr. 266-336, 350-64, 490-542, 545-586).  In response, the Commissioner contends that none of the above-cited medical sources are medical opinions since none of these records articulated any  physical or mental restriction or other functional deficit as a result of Plaintiff's impairments.

As discussed above, Social Security Regulations define "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [his or her] symptoms, diagnosis and prognosis, what you can still do despite your impairment(s), and your physical or mental restrictions."  20 C.F.R. §§404.1527(a), 416.927(a).  Thus, assuming that the above-cited portions of the record are the "medical opinions" on the issue of symptoms severity that Kalenkoski claims the ALJ failed to consider, our review of this evidence reveals that they do not

comport with the regulatory definition of a "medical opinion" and are instead merely descriptions of the onset, character, location, frequency and duration of Plaintiff's symptoms over time, precipitating and aggravating factors, and memorializations of Kalenkoski's subjective complaints, rather than statements which reflect a physician's judgment about the nature and severity of Plaintiff's impairments. It is well-settled that "the mere memorialization of a claimant's subjective complaints in a medical report does not elevate those symptoms to a medical opinion." See Morris v. Barnhart, 78 F.App'x 820, 824 (3d Cir. 2003).  Therefore, Kalenkoski errs when he suggests that these matters rise to the level of treating source opinions. They do not.

Of course, this does not mean that an ALJ is free to disregard such evidence, and, in fact the ALJ did not do so in this case.  Instead, we find that the ALJ properly considered Plaintiff's treatment records in accordance with 20 C.F.R. §§404.1545, 416.945, which requires that the ALJ assess a claimant's RFC based on "all the relevant evidence in [his or her] case record," but was not required to weigh this evidence based on the regulatory factors outlined in 20 C.F.R. §§404.1527, 416.927. The ALJ then properly concluded that these self-reported symptoms did not rise to the level of a wholly disabling condition for the Plaintiff, a conclusion which we find is consistent with the evidence.

**E.** **The ALJ's Decision that Plaintiff could do "Other Work" is**

**Supported by Substantial Evidence**

At the hearing, the ALJ posed a series of three hypothetical questions to the vocational expert. The ALJ based his decision on the VE's response to the third hypothetical question.[4]  Kalenkoski, however, contends that the ALJ should have relied on the second hypothetical question.[5]   In his final argument Kalenkoski contends that the ALJ's decision that Plaintiff could do "other work" at step five is defective because the VE's testimony cannot be considered substantial evidence in this case. Specifically, Kalenkoski alleges that the VE testimony relied upon by the ALJ was elicited in response to an incomplete hypothetical question that failed to include two of Kalenkoski's credibly established limitations; namely, that Plaintiff

---

[4] In his third hypothetical question, the ALJ asked the VE whether work existed in significant numbers in the national economy for an individual with the same vocational characteristics as Plaintiff who could perform sedentary work, and had the same non-exertional limitations described in the ALJ's first hypothetical – the hypothetical person should: never climb ropes, ladders, or scaffolds; avoid concentrated exposure to environmental irritants, such as dust, fumes, odors, gases and chemicals; and, avoid concentrated exposure to temperature extremes. (Tr. 89-90, 92-93). The VE responded that such an individual would be able to perform other work.

[5] In his second hypothetical question, the ALJ asked the VE whether work existed in significant numbers in the national economy for an individual with the same vocational characteristics as Plaintiff who could perform light work, except that, in addition to non-exertional limitations described in the first hypothetical question, the hypothetical individual would also be "off task" for twenty percent of the workday, and would require more rest periods than is provided in a usual work setting. (Tr. 91). The ALJ responded that either of the "additional" limitations taken individually on a consistent basis would not be tolerated by employers. Id.

would be "off task" approximately twenty percent of each workday and would need unscheduled breaks in excess of the normally scheduled breaks due to his migraine headaches and leg weakness.

The ALJ is not bound to accept as true the restrictions set forth in a hypothetical where the ALJ finds that they were unsupported by substantial evidence. Rather, the ALJ must simply "accurately convey to the vocational expert all of a claimant's *credibly established limitations.*" Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005), citing Plummer v. Apfel, 186 F.3d 422, 431 (3d Cir. 1999). Therefore, in making this assessment and framing a proper hypothetical question for a vocational expert, "[l]imitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible—the ALJ can choose to credit portions of the existing evidence but 'cannot reject evidence for no reason or for the wrong reason' (a principle repeated in Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir.1993); Reg. § 929(c)(4))." Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005).

Here, Plaintiff has failed to cite to any evidence, beyond the ALJ's hypothetical, supporting the existence of these limitations and our own review of the record reveals little evidence of such a limitation beyond Plaintiff's assertion that he "has to stop quite a lot" due to his symptoms when completing his online course work. (Tr. 77).

24

As was noted by the ALJ in his decision, however, Kalenkoski testified that his daily activities include  feeding and walking his dog, preparing simple meals on a daily basis, performing household chores, shopping in stores and watching television. Moreover, in a function report, Kalenkoski stated that he was able to pay attention, even though he checked a box indicating that his impairments affected his ability to concentrate. This evidence suggests a greater aptitude for concentration, and the ability to persist in activities for intervals of time consistent with those required in the usual work setting without additional breaks, than alleged.  Accordingly, we find that the ALJ's decision to exclude these limitations from the RFC and hypothetical is supported by substantial evidence, which is adequately explained in the record of these proceedings.

## IV.   Conclusion

Accordingly, for the foregoing reasons, we will affirm the decision of the Commissioner pursuant to 42 U.S.C. § 405(g).

An order consistent with this memorandum will be entered separately.

**_S/Martin C. Carlson_**
Martin C. Carlson
United States Magistrate Judge

**Dated:** October 10, 2014